IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **RICHARD M. STALLINGS,** )<br>**Administrator of the Estate of Richard** )<br>**R. Stallings, Deceased,** )<br>   )<br>   **Plaintiff,**   )<br>   )<br>   VS.   )   NO. CV 06-4078-JPG<br>   )<br>**THE BLACK & DECKER** )<br>**CORPORATION, a foreign corporation,** )<br>**formerly known as The Black and Decker** )<br>**Manufacturing Company; and BLACK** )<br>**& DECKER (U.S.) INC., a foreign** )<br>**corporation;** )<br>   )<br>   **Defendants.**   ) | |

**ORDER**

**FRAZIER, Magistrate Judge:**

Richard R. Stallings died on April 17, 1991, the victim of a tragic incident which could have provided the beginning of either a detective novel or a lawsuit. His estate's representative chose the latter and sued Black & Decker, Inc. It is alleged that the Black & Decker circular saw used by Mr. Stallings on that day was defective and unreasonably dangerous in one or more of three ways: it had a proclivity to suddenly and unexpectedly kick out of the material being cut; it was not made available with a riving knife or anti-kickback device to prevent such an injury; and/or it was not made available with a riving knife or anti-kickback device which would act as a guard to protect against such an injury. Mr. Stallings was apparently alone when his injury occurred (foul play and suicide were ruled out by a coroner), and the wound which caused his death was a slashed throat.

Plaintiff has hired Mr. Michael Freeborn of the law firm, Freeborn & Peters, LLP, Chicago, Illinois, to represent the estate against Black & Decker, which has in turn moved to disqualify Mr.

Freeborn and his firm from the action (Doc. No. 29). After consideration of much papering and argument on the issue from both sides, the motion will be GRANTED.

During February of 2005, Black & Decker hired attorney John Stevens of the Freeborn & Peters firm to represent it in a lobbying effort to oppose a certain piece of proposed legislation known as the "Electric Saw Safety Act," Illinois House Bill No. 450. Black & Decker's present trial counsel, Barry Montgomery, had apparently contacted Mr. Freeborn, who invited Mr. Stevens to the table. According to Mr. Freeborn, "government relations" is a specialty of Mr. Stevens. Mr. Stevens signed on and represented Black & Decker successfully in defeating House Bill 450. Matters concerning Black & Decker's corporate philosophy on saw safety were shared with Mr. Stevens and eventually used by him to defeat the proposed legislation. Details of the contacts Mr. Stevens had with persons inside Black & Decker are set forth in his affidavits. During the spring of 2006, Mr. Freeborn asked Mr. Stevens about the type and depth of information he had received from Black & Decker during his brief lobbying stint on its behalf. That is also set forth in Mr. Stevens' affidavits.

Mr. Freeborn has taken the position that no confidential information which would be useful to him in this lawsuit was either gained by Mr. Stevens a year earlier or passed on to him by Mr. Stevens. He also states that he will have no further communication with Mr. Stevens concerning anything to do with Black & Decker during the pendency of this action.

It is unnecessary to delve too deeply, or at all for that matter, into who divulged what confidential matters to whom. I believe that if the Court of Appeals for the Seventh Judicial Circuit were to examine this issue today, it would do so pursuant to Judge Posner's opinion in *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263 (7th Cir. 1983). In *Analytica*, Judge Posner refined the

appellate court's earlier decision in *LaSalle National Bank v. County of Lake*, 703 F.2d 252 (7th Cir. 1983), into an easier to work with if somewhat harsh product. The substantial relationship test relied on in *Analytica* examines whether an attorney or his firm who undertakes an action against a former client could have gained information in the earlier representation which may be relevant in the second. "It is irrelevant whether he actually obtained such information and used it against his former client, or whether — if the lawyer is a firm rather than an individual practitioner — different people in the firm handled the two matters and scrupulously avoided discussing them." *Analytica*, at 1266. The inquiry is not so much what was learned or shared but whether the subject matters of the two representations overlap. Once a substantial relationship is established between the subject matters of the earlier and subsequent representations, further inquiry is closed.

Judge Posner recognized that such a rigid test "has its problems," *Analytica*, at 1269, but the alternative, as he goes on to point out, entails a thornier path. From the Court's perspective, simply searching for an overlap between the two representations presents a much easier task, and that is always welcome. Mr. Freeborn is an esteemed attorney, and his ethics are not an issue in this. What is at issue is the broad issue itself, electric saw safety. There is no doubt that the "government relations" effort successfully undertaken by Mr. Stevens and the Freeborn firm and the present case both involve electric saw safety. For that reason, the motion to disqualify Mr. Michael Freeborn and the firm of Freeborn & Peters, LLP is GRANTED.

   IT IS SO ORDERED.

   DATED: December 5, 2006.

                                      *s/Philip M. Frazier*
                                      **PHILIP M. FRAZIER**
                                      **UNITED STATES MAGISTRATE JUDGE**